**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ESTELLE ROBINSON, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HOLIDAY UNIVERSAL INC., et al.,** | : | |
| **Defendants** | : | **NO. 05-5726** |

**MEMORANDUM AND ORDER**

PRATTER, DISTRICT JUDGE                                    SEPTEMBER 11, 2006

**BACKGROUND**

Estelle Robinson and Gene Swindell seek to pursue a class action attack upon the

initiation fees charged by Holiday Universal, Inc., Scandinavian Health Spa, Inc., and Bally Total

Fitness Holding Corporation (jointly, "Health Clubs").  Plaintiffs originally filed their claim in

state court.  It was timely removed to federal court.  Following an early work-out over issues

arising pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), the Court denied

Plaintiffs' effort to have the litigation remanded to state court.  Meanwhile, the Health Clubs

filed a motion to dismiss the complaint as to which the Court heard oral argument on June 22,

2006.  During the oral argument, the Court made inquiries as to Plaintiffs' ostensible intention to

pursue the case as a class action.  This inquiry apparently prompted Plaintiffs to move to extend

the time by which they must move for class certification, a motion that the Health Clubs not only

opposed but also prompted the filing of the Health Clubs' Motion to Strike Plaintiffs' Class

Allegations.  Thus, there are now three motions pending for resolution.

For the reasons summarized below, the Motion to Dismiss is denied without prejudice to

the Health Clubs to raise again such of their arguments as may be appropriate at the conclusion

of discovery, the Plaintiffs' motion to extend time to move for class certification is granted as

permitted in the accompanying Order, and the Motion to Strike Class Action Allegations is

denied.

**DISCUSSION**

**I.  Health Clubs' Motion to Dismiss the Complaint**

The Complaint alleges that the Health Clubs violated Pennsylvania's Health Club Act, 73

PA. CONS. STAT. ANN. §§ 2161, *et seq.* ("HCA"), which regulates health clubs operating within

the Commonwealth, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law,

73 PA. CONS. STAT. ANN. §§ 201-1, *et seq.* ("UTPCPL"), which prohibits unfair or deceptive acts

or practices in any trade or commercial endeavor.  Plaintiffs also present claims for unjust

enrichment and for declaratory relief.  The Health Clubs move pursuant to Rule 12(b) of the

Federal Rules of Civil Procedure to dismiss the complaint because (1) the HCA is inapplicable,

(2) Plaintiffs do not state a cognizable claim under the HCA, (3) the HCA is void because it is

unconstitutionally vague, (4) Count I fails to state a claim for equitable relief because the

UTPCPL does not authorize a private plaintiff to seek such relief, (5) inasmuch as there are valid

contracts between Plaintiffs and a defendant, Count II fails to state a claim for unjust enrichment

and/or restitution, and (6) Count III fails to state a claim for declaratory judgment because

Plaintiffs have not disaffirmed their respective contracts.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley v. Gibson,

355 U.S. 41, 45-46 (1957).  Such a motion will be granted only when it is "certain that no relief

could be granted under any set of facts which could be proved by the plaintiff."  Ransom v.

2

Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  In making such a determination, the Court must

accept as true all allegations made in the complaint and all reasonable inferences that may be

drawn from those allegations, and must view those facts and inferences in the light most

favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  To

decide a motion to dismiss, courts can draw such facts and inferences from the complaint,

exhibits attached to the complaint, matters of public record (including government agency

records), as well as undisputably authentic documents that are attached as exhibits to the motion

if the plaintiff's claims are based on the documents.  Pension Benefit Guar. Corp. v. White

Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

### A.  Applicability of HCA

The upshot of the complaint is that the Health Clubs violate Section 2165 of the HCA by

charging grossly excessive initiation fees.  Section 2165 provides, in relevant part, that

> the amount of any initiation fees imposed by a health club shall be
> reasonably related to the club's costs for establishing the initial
> membership[, and] shall not be imposed for the purpose of
> circumventing the requirements of this act.

73 PA. CONS. STAT. ANN. § 2165.  The Health Clubs respond by arguing that the HCA is

inapplicable because the HCA only applies to "health club contracts" and, according to the

Health Clubs, neither Ms. Robinson nor Mr. Swindell entered into a "health club contract" as

defined by the statute.

The HCA defines a "health club contract" as "[a]n agreement in which the buyer of health

club services purchases, or becomes obligated to purchase, health club services to be rendered

over a period of time of more than three months . . . ."  73 PA. CONS. STAT. ANN. § 2162.  The

Health Clubs assert that because Plaintiffs' respective contracts were monthly renewable agreements they did not enter into "health club contracts."[1]  The Health Clubs support this argument by invoking the full title of the HCA, as well as the stated purpose of the Act.  The full title of the statute is "An Act Providing for the regulation of health club contracts; and providing for further duties of the Bureau of Consumer Protection, the Attorney General and district attorneys."  73 PA. CONS. STAT. ANN. § 2161 (Historical and Statutory Notes).  The purpose of the HCA was set forth by the legislature as follows:

> The purpose of this act is to safeguard the public interest against fraud, deceit and financial hardship and to foster and encourage competition, fair dealing and prosperity in the field of health club services by prohibiting false and misleading advertising and dishonest, deceptive and unscrupulous practices by which the public has been injured in connection with contracts for health club services.

73 PA. CONS. STAT. ANN. § 2161 (Historical and Statutory Notes).  The Health Clubs argue that the Complaint must be dismissed because the HCA is inapplicable to their health club agreements because those agreements are not "health club contracts."  In contrast, Plaintiffs argue that the HCA applies to more than just health club contracts.  Specifically, Plaintiffs argue

---

[1] Plaintiffs allege that the term of Ms. Robinson's contract required her to pay a "Membership Fee" of $632, of which Ms. Robinson put $100 down and financed the balance at an annual percentage rate of 17.50%, with monthly payments of $19.10 for 36 months.  Plaintiff Robinson was further obligated to pay "Monthly Dues" of $2.60 for a total monthly payment of $21.60.  The membership renewed automatically.

At the time of the filings of the motion and subsequent response and reply, Plaintiffs did not have a copy of the contract signed by Mr. Swindell.  Plaintiffs alleged in their filings that, despite numerous requests, Scandinavian would not furnish Mr. Swindell with a copy of his contract.  On June 16, 2006 counsel for the Plaintiffs filed a Praecipe to Substitute Exhibit B to the Complaint (Docket No. 30), to which was attached a copy of Mr. Swindell's contract to be supplemented as Plaintiffs' Exhibit B.  The contract is quite blurry and difficult to read, but Mr. Swindell appears to have been charged a membership fee of $275, with $100 down, monthly payments of $39.75, and membership dues of $3.00 per month.

4

that Section 2165 of the HCA, which they argue the Health Clubs have violated, applies to any initiation fee charged by a health club, regardless of whether the member enters into a "health club contract."  Plaintiffs urge the Court to look to the plain language of the statute, noting that Section 2165 does not refer to the term "health club contract."  Indeed, assert the Plaintiffs, by its own terms, one of the primary reasons for Section 2165 is to prevent health clubs from circumventing the law by selling short-term contracts.

Plaintiffs also argue that it is entirely reasonable for some sections of the HCA to apply to all health club memberships, such as Section 2165 regarding initiation fees, and some to memberships which are longer than three months, such as Section 2163 requiring extensive cancellation rights and written disclosures for long-term contracts while excusing health clubs from those burdens where the consumer's financial commitment may be relatively modest. Plaintiffs argue that Section 2165 is equally important to consumers with contracts shorter than three months and those with contracts longer than three months.  In addition, Plaintiffs call the Court's attention to Section 2174, which requires "[e]very health club . . . to have on the health club's premises during the club's hours of operation a person trained and certified to administer CPR."  73 PA. CONS. STAT. ANN. § 2174(a).  Plaintiffs reason that the obvious purpose of this section is to safeguard the health of consumers using the services of a health club, but under the Health Clubs' reasoning, this provision would only apply to health clubs which sell memberships in excess of three months.  According to the Plaintiffs, "[i]t is ludicrous to suggest that the General Assembly only felt the need to protect the lives of consumers who enter longer contracts, in disregard of the welfare of other citizens . . . [and] [l]ikewise, the financial safeguards of Section 2165 apply to all consumers who contract with a health club."

5

The Health Clubs argue that Section 2165, by its terms, only applies to "health club contracts" because it provides that "[i]nitiation fees shall be included in the computation of any refunds due under this act." 73 PA. CONS. STAT. ANN. § 2165.  According to the Health Clubs, the only provision for refunds pursuant to the HCA is Section 2163, entitled "Contents of Health Club Contract," which provides that refunds are to be made to the "buyer." Id. at § 2163.  In turn, "buyer" is defined as a "natural person who enters into a health club contract." Id. at § 2162.

The Health Clubs argue that Plaintiffs' argument regarding CPR-trained employees is unavailing because the General Assembly had not required CPR-trained persons at any other places of exercise, recreation or amusement where such training would be extremely useful.  In an effort to blunt the impact of the logic of some of the Plaintiffs' arguments, the Health Clubs assert that the legislature is permitted to address a problem or goal one step at a time, and the fact that a statute does not address every evil does not nullify the statute.  Moreover, assert the Health Clubs, Section 2174, unlike Section 2165, does not incorporate terms expressly used in connection with "health club contracts."  Thus, the Health Clubs argue that the section regarding CPR can logically be construed as applying beyond health clubs selling "health club contracts," while Section 2165 regarding initiation fees cannot.

At this juncture, the Court will not embrace the Health Clubs' restrictive interpretation of the statute.  The Health Club Act's stated purpose is to protect consumers from deceptive practices "in connection with contracts for health club services."  "Health club services" is defined as "[s]ervices, privileges or sights offered for sale or provided by a health club." 73 PA. CONS. STAT. ANN. § 2162.  The Plaintiffs allege that they have entered into contracts for health

club services, which, at least as to Ms. Robinson, are automatically renewable for periods lengthy enough to meet the three-month stint that the Health Clubs emphasize.  Moreover, the statute defines "health club" as an organization engaged "in the sale of memberships" and says nothing about those memberships being "health club contracts."

The language of Section 2165 suggests that the HCA applies to more than health club contracts of three-months or longer duration.  That is, Section 2165 states that initiation fees shall not be imposed for the purpose of circumventing the requirements of the HCA.  Section 2163 sets forth stringent provisions that "health club contracts" must contain.  Acceptance of the Health Clubs' interpretation would mean that a health club could easily circumvent the requirements of Section 2163 by making sure that its clients never purchase a "health club contract," but instead pay exorbitant initiation fees, all while thwarting the legislative purpose in passing the law in the first instance.  Accordingly, the Court is not persuaded that the Health Clubs' argument for dismissal on this ground has merit.

**B.  Sufficiency of Pleading a Violation of the HCA**

The Health Clubs next argue that even if the HCA applies to these Plaintiffs' contracts, they have not pleaded a violation of Section 2165 because the initiation fees charged to them were "reasonably related to the club's costs for establishing the initial health club membership." In their Complaint, Plaintiffs allege that the initiation fees they were charged were unreasonable and not related to the costs for establishing initial membership.  The Health Clubs devote considerable energy and inventiveness in their motion to argue just what costs may be reasonably recaptured in setting an initiation fee.  The Health Clubs stretch and reach to include land purchases and construction costs, among other capital expenditures within the extensive panoply

7

of costs that are supposedly includable in calculating an initiation or membership fee.  In some cases, those expenditures might include land costs for one of a defendant's installations some 3000 miles or more from the facility where a customer signs up as a consumer of health club services.  Be that as it may, the motion to dismiss stage of this case is simply too early to make any determination of the reasonableness of the initiation fees charged to these Plaintiffs or others. The Complaint adequately alleges a violation of the HCA in that regard.

### C.  Constitutionality of the HCA

The Health Clubs next challenge the constitutionality of Section 2165 of the HCA.  They argue that the provision violates due process and is void for vagueness because it provides no guidance or standards as to what amount of an initiation fee would comply with the statute, leaving a health club to guess at what amount would be permitted.

The Health Clubs cite United States v. L. Cohen Grocery Co., 255 U.S. 81, 89 (1921), in which the Supreme Court, holding that a statute which made it unlawful for any person to "make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries" was unconstitutionally vague, stated:

> Observe that the section forbids no specific or definite act. It confines the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against.  In fact, we see no reason to doubt the soundness of the observation of the court below, in its opinion, to the effect that, to attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury.

L. Cohen Grocery Co., 255 U.S. at 89.  The Health Clubs also cite A.B. Small Co. v. Am. Sugar

Refining Co., 267 U.S. 233, 239 (1925), in which the Supreme Court, discussing L. Cohen

Grocery, stated that "the court [in L. Cohen Grocery] illustrated that the terms 'unjust,'

'unreasonable' and 'excessive' as applied to prices by th[e] provision [making it unlawful to

make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries]

had no commonly recognized or accepted meaning."  The Health Clubs also cite Cline v. Frink

Dairy Co., 274 U.S. 445 (1927), in which the Supreme Court held that the term "reasonable

profit" as used in a Colorado statute was unconstitutionally vague, stating:

> But it will not do to hold an average man to the peril of an indictment
> for the unwise exercise of his economic or business knowledge
> involving so many factors of varying effect that neither the person to
> decide in advance nor the jury to try him after the fact can safely and
> certainly judge the result.  When to a decision whether a certain
> amount of profit in a complicated business is reasonable is added that
> of determining whether detailed restriction of particular anti-trust
> legislation will prevent a reasonable profit in the case of a given
> commodity, we have an utterly impracticable standard for a jury's
> decision.  A legislature must fix the standard more simply and more
> definitely before a person must conform or a jury can act.

Cline v. Frink Dairy Co., 274 U.S. 445, 465 (1927).

Plaintiffs argue that Section 2165 is not vague at all, but can be given its common sense

meaning, thereby coinciding with the legislature's desire to prevent health clubs from charging

large initiation fees in order to thwart the aims of the HCA.  Plaintiffs assert that the statute

contains a standard by which the possible excessiveness of fees must be judged, namely, by the

health club's actual costs of establishing the membership in question.  Plaintiffs further argue

that Section 2165 is not void for vagueness because, by requiring that a new member's initiation

fee bear a reasonable relationship to the health club's costs of establishing that person as a

member, the provision puts the health club on notice that it will not be allowed to "frontload" its

membership contracts with disproportionately high initiation fees, thereby locking members into

long-term commitments.  Plaintiffs contend that the fact that Section 2165 is not formulaic does

not mean that it is unconstitutional.  Rather, "the law is full of instances where a man's fate

depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of

degree."  United States v. Powell, 423 U.S. 87, 93 (1987) (internal quotation marks and citation

omitted).[2]

 As Plaintiffs assert, the burden of showing that a statute is unconstitutional is a heavy

one.  Here, the Health Clubs would have to show that Section 2165 is so meaningless that it

"proscribe[s] no comprehensible course of conduct at all."  Powell, 423 U.S. at 92.  Plaintiffs

argue that because Section 2165 does not regulate First Amendment activity, the Health Clubs

must show that it is unconstitutionally vague in nearly all of its applications.  Village of Hoffman

Estates v. Flipside, 455 U.S. 489, 497 (1982) ("A law that does not reach constitutionally

protected conduct . . . may nevertheless be challenged on its face as unduly vague, in violation of

due process.  To succeed, however, the complaint must demonstrate that the law is impermissibly

vague in all of its applications."); United States v. Mazurie, 419 U.S. 544, 550 (1975) ("It is well

established that vagueness challenges to statutes which do not involve First Amendment

---

 [2] In Powell, 423 U.S. at 92, the Court noted that a law requiring oversized or heavy loads
to be transported by the shortest practicable route is not unconstitutionally vague because the
carrier has been given clear notice that a reasonably ascertainable standard for conduct is
mandated, and it is for him to ensure that his behavior does not fall outside the legal limits.
Powell involved a vagueness challenge that it was impossible to know whether a sawed-off
shotgun was illegal under a statute that proscribed the mailing of concealable firearms.  The
Supreme Court held that the law intelligibly forbade a definite course of conduct and gave the
respondent adequate warning that shipping the firearm was a criminal offense.  Id. at 93.

freedoms must be examined in the light of the facts of the case at hand.  In determining whether [a statute] is unconstitutionally vague as to respondents, we therefore must first consider the evidence . . . .") (citation omitted); <u>Artway v. Attorney Gen. of New Jersey</u>, 81 F.3d 1235, 1269 (3d Cir. 1996) (Plaintiff "has standing only to raise the vagueness of [Megan's Law] as it applies to him unless he can prove that the Act is vague in substantially all its applications.").

Plaintiffs argue that the vagueness doctrine does not require the elimination of all uncertainty in statutory regulation.  <u>Powell</u>, 423 U.S. at 94 ("The fact that Congress might, without difficulty, have chosen '[c]learer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague.").  <u>See also</u> <u>United States v. Tyler</u>, 281 F.3d 84, 91 n.6 (3d Cir. 2002).  Rather, "the degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment." <u>Village of Hoffman Estates</u>, 455 U.S. at 498.  With respect to economic regulations, such statutes are:

> subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.  Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.  The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.

<u>Id.</u> at 498-99.

In their reply, the Health Clubs argue that the discussion of <u>L. Cohen Grocery</u> in <u>Powell</u> is instructive:

An example of such a vague statute is found in United States v. L. Cohen Grocery Co., 255 U.S. 81, 89 (1921).  The statute there prohibited any person from 'willfully . . . mak[ing] any unjust or unreasonable rate or charge in . . . dealing in or with any necessaries . . . .'  So worded it 'forbids no specific or definite act' and 'leaves open . . . the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against.'  Ibid.  On the other hand, a statute which provides that certain oversized or heavy loads must be transported by the "shortest practicable route" is not unconstitutionally vague.  Sproles v. Binford, 286 U.S. 374, 393 (1932).  The carrier has been given clear notice that a reasonably ascertainable standard of conduct is mandated; it is for him to insure that his actions do not fall outside the legal limits.  The sugar dealer in Cohen, to the contrary, could have had no idea in advance what an "unreasonable rate" would be because that would have been determined by the vagaries of supply and demand, factors over which he had no control. Engaged in a lawful business which Congress had in no way sought to proscribe, he could not have charged any price with the confidence that it would not be later found unreasonable.

United States v. Powell, 423 U.S. 87, 92-93 (1975).  Thus, the Health Clubs argue that, like the

sugar dealers in L. Cohen Grocery, the factors involved in determining the costs associated with

establishing a health club membership are dependent upon the market and are out of their

control.  They argue that they could not charge any price with the confidence that it would not

later be found to be unreasonable.  The Health Clubs say that there is no way for a reader of

Section 2165 determine that the legislature intended the phrase "reasonably related to the club's

costs for establishing the initial health club membership" to mean the costs solely associated with

the sign-up paperwork as suggested by the Plaintiffs.  Indeed, assert the Health Clubs, if the

legislature had so intended, it would have specifically stated that the initiation fee could not

exceed the actual cost of preparing the paperwork for the contract.  Instead, the legislature used

the "reasonably related" language without providing any guidance as to what costs could be

included, much less weighing in on the meaning of "reasonably related."

Although the word "reasonable" has been considered to be vague in some settings unless it is tied to some measurable standard, here, the measurable standard is "costs for establishing the initial health club membership."  Thus, the issue seems to be whether that "measurable standard" is vague.  Defendants argue that it includes all costs of establishing a membership, while Plaintiffs assert that it includes simply the costs of getting the customer into the gym membership contract itself.  In this regard, the prematurity of considering whether the initiation fees at issue here are reasonable or violative of the statute suggests itself on the issue of constitutionality as well.

It appears to the Court that the Health Clubs are "straining to inject doubt as to the meaning of words where no doubt would be felt by the normal reader."  Powell, 423 U.S. at 93. That is, although the statute does not define what the costs that might be considered are, the plain language of the statute's reference to "costs of establishing the initial membership" is decidedly not the same as "costs of establishing the health club."  A commonsense reading of the provision suggests reference to the costs of including the person as a member of the club, not reference to the costs of establishing the club itself.  As sophisticated business enterprises, the Health Clubs are hardly adrift in uncharted seas unable to fathom how to go about establishing a schedule of reasonable fees.  Thus, the Court will not declare the HCA void for unconstitutional vagueness.

### D.  Plaintiffs' Claim for Equitable Relief

Count I of the Complaint alleges violations of the UTPCPL, prompting Plaintiffs to seek injunctive and other equitable relief.  The Health Clubs argue that someone bringing private claims under the UTPCPL cannot seek equitable relief.  They assert that the UTPCPL authorizes

only the Attorney General or a district attorney to do so.  73 Pa. Cons. Stat. Ann. § 201-4.

They contend that in a private action, such as here, a plaintiff may only recover actual damages,

or $100, whichever is greater.  Id. at § 201-9.2.  Furthermore, argue the Health Clubs, although

Section 201-9.2(a) provides that, in addition to monetary damages, the court may provide such

additional relief as it deems necessary or proper, if the legislature had intended to give the court

the power to grant injunctive relief in a private action, it would have so expressly provided, as it

did for actions brought by the Attorney General or a district attorney.  Thus, conclude the

Defendants, Count I of the Complaint requesting injunctive relief should be dismissed.

Plaintiffs contend that equitable relief is available to them because Section 201-9.2(a)

clearly states that a court may provide such additional relief as it deems necessary or proper.

Plaintiffs argue that while injunctive relief is not mentioned explicitly among a consumer's

remedies, it is encompassed within a court's statutory authority, and because the UTPCPL's

remedies are to be liberally construed,[3] allowing consumers to obtain injunctive relief is a

reasonable interpretation of the statute.  Plaintiffs have referred the Court to at least one trial-

level state court that granted injunctive relief in an action brought under the UTPCPL.[4]  The

Health Clubs cite no case law to support their argument that equitable relief is unavailable to

private plaintiffs.

The Court's research has not uncovered any federal court decisions where an injunction

---

[3] See Commw. v. Monumental Properties, Inc., 329 A.2d 812, 817 (Pa. 1974) ("Since the Consumer Protection Law was in relevant part designed to thwart fraud in the statutory sense, it is to be construed liberally to effect its object of preventing unfair or deceptive practices.").

[4] See Wilson v. Ciels, 99 Montg. 97 (C.P. 1974) (granting injunctive relief where defendants' actions constituted unfair methods of competition).

requested by a private plaintiff was granted or denied pursuant to the UTPCPL.  However, in at least one case brought in this district under the consumer protection law, the plaintiff had requested injunctive relief.  In Johnson v. Gerber Products Co., 949 F. Supp. 327 (E.D. Pa. 1996), the plaintiff brought suit pursuant to the consumer protection statutes of all 50 states and Washington, D.C., and, in her complaint, sought, *inter alia*, injunctive relief.  Id. at 328.  The district court, in deciding a motion to remand, declined to consider the costs of any injunction against the defendant in a calculation related to the jurisdictional amount in controversy.  Id. at 331.  There was no discussion regarding the ability of the individual plaintiff to request such relief.

Certainly, this Court has no expectation one way or the other as to whether equitable relief is or may be appropriate here, even if all of the allegations in the Complaint turn out to be true.  However, the Health Clubs have not persuaded the Court of the merit of their position on this point at this stage of the litigation.

### E.  Unjust Enrichment and Restitution Claims

The Health Clubs also assert that Count II of the Complaint, titled Unjust Enrichment/Accounting/Disgorgement/Restitution, fails to state a claim.  They rely on Abrams v. Toyota Motor Credit Corp., 2001 WL 1807357, at *12 (Pa. Com. Pl. 2001) ("Pennsylvania law holds that a court 'may not make a finding of unjust enrichment . . . where a written or express contract between the parties exists.'") (quoting Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999)).  The Health Clubs contend that while a party can theoretically plead in the alternative, these Plaintiffs have not done so and can not do so, because the Plaintiffs plead that there are written contracts between the parties.  Thus, contend the Health Clubs, because

Plaintiffs plead the existence of written contracts, Plaintiffs cannot maintain an action for unjust enrichment.

Plaintiffs' rejoinder is that their claim for unjust enrichment should not be dismissed because they have sufficiently presented that cause of action, in that their Complaint specifically alleges that the Health Clubs were enriched through the collection of fees that they were not entitled to collect. Plaintiffs argue that they must be allowed to plead in the alternative, and, while they may only be able to recover at trial on certain counts or claims, nothing prohibits them from asserting alternate theories of liability or distinct causes of action and choosing to prove only one at trial, provided that the Defendants have notice of both.

Plaintiffs mistakenly take refuge in Pennsylvania Rule of Civil Procedure 1020(c) and the state court cases that discuss that Rule. See, e.g., Commw. v. Manor Mines, Inc., 565 A.2d 428 (Pa. 1990) (alternative damages theories properly noticed); Schreiber v. Rep. Intermodal Corp., 375 A.2d 1285 (Pa. 1977). Of course, it is the federal procedural rules which govern here. Hanna v. Plummer, 380 U.S. 460, 465 (1965). Fortunately for the Plaintiffs, the federal rules do not conflict with the Pennsylvania rule on this issue and also permit pleading alternative causes of action. FED. R. CIV. P. 8(e)(2). See United States v. Kensington Hosp., 760 F. Supp. 1120, 1135 (E.D. Pa. 1991) ("Federal rules allow pleading in the alternative. Courts have permitted plaintiffs to pursue alternative theories of recovery based both on breach of contract and unjust enrichment, even when the existence of a contract would preclude recovery under unjust enrichment."). Although for the time-being Plaintiffs may maintain their actions for unjust enrichment and breach of contract, they may not recover under both theories, even if they ultimately prevail in their proofs.

16

### F.  Plaintiffs' Claim for Declaratory Judgment

The Health Clubs assert that Count III of Plaintiffs' Complaint, requesting a declaratory

judgment that the Plaintiffs' contracts are voidable, should be dismissed because, unless and until

Plaintiffs affirmatively choose to void their contracts, they are simply seeking an advisory

opinion.[5]  That is, according to the Health Clubs, Plaintiffs cannot continue to obtain the benefits

of their contracts while seeking this Court's ruling as to whether the contracts are voidable at

their option.

Plaintiffs respond that their declaratory judgment claim should not be dismissed because,

although the Health Clubs argue that no controversy exists until Plaintiffs demonstrate an

intention to rescind, the filing of a complaint seeking declaratory relief and recission is sufficient

to demonstrate the requisite intention to rescind.  Jones v. Saxon Mortgage, Inc., 1998 U.S. App.

LEXIS 22101, at *12 (4th Cir. 1998) (under the Truth In Lending Act, filing of lawsuit sufficient

notice of rescission where complaint actually seeks rescission); Taylor v. Domestic Remodeling,

Inc., 97 F.3d 96 (5th Cir. 1996) (filing of TILA complaint constitutes statutory notice of

rescission); Pulphus v. Sullivan, 2003 WL 1964333, at *16 (N.D. Ill. Apr. 28, 2003) (same).

Plaintiffs further argue that parties are allowed to seek declarations as to the legal status

---

[5] Defendants cite Bd. of Supervisors of S. Middleton Township v. Diehl, 694 A.2d 11, 13
(Pa. Commw. 1997) (citations omitted):

> [D]eclaratory judgment relief requires the presence of antagonistic
> claims indicating imminent and inevitable litigation coupled with a
> clear manifestation that the declaration will be of practical help in
> ending the controversy.  This relief cannot be used in anticipation of
> events that may never occur or for rendering an advisory opinion that
> may prove to be purely academic; there must be a real controversy.
> Finally, the grant of a declaratory judgment is not a matter of right,
> but a matter of the court's discretion.

of their contracts where, as here, there is a dispute as to the contracts' validity.  In support of this position, Plaintiffs cite Williams v. Empire Funding Corp., 183 F.R.D. 428, 433 (E.D. Pa. 1998), in which the court certified a class "for the purpose of determining whether plaintiffs are entitled to seek rescission" of their home improvement contracts pursuant to the federal Truth In Lending Act.  Subsequently, although the plaintiff and the class members had not affirmatively sought to rescind the contracts (other than through the lawsuit), the court ultimately ruled in favor of the plaintiff and class on the merits of the rescission claim and entered a declaratory judgment that the plaintiffs were entitled to rescind the contracts.  Williams v. Empire Funding Corp., 109 F. Supp. 2d 352, 364 (E.D. Pa. 2000).

The Health Clubs argue that there is a split in the federal courts regarding the issues presented in Williams.  The Health Clubs assert that, in Williams, the court acknowledged that a class action seeking rescission itself was not appropriate, but held that a class seeking a declaration that the notices of rescission violate the TILA and thus each member of the class is entitled to seek rescission was proper.  Williams, 183 F.R.D. at 435.

The Health Clubs direct the Court's attention to Gibbons v. Interbank Funding Group, 208 F.R.D. 278, 285 (N.D. Cal. 2002), in which the court observed that "[i]t is not at all clear why, if class-wide rescission is inappropriate, a declaration authorizing the same thing is not also inappropriate."  There, the court, in holding that a class action was inappropriate, stated:

> It is undisputed that the purported class members (other than Mr. Gibbons) have not submitted notices to rescind.  Thus, plaintiff is effectively asking for an advisory opinion.  Without any rescission requests, nor subsequent denials by defendants, it is not at all clear that a justiciable controversy exists between the class and defendants.

Id.  The Health Clubs argue that in the instant case neither of the Plaintiffs nor any purported

18

class member has disaffirmed his or her respective contract, and, thus, Plaintiffs are seeking an advisory opinion, which is clearly improper.

Plaintiffs argue that although the Health Clubs "inaccurately" portray <u>Williams</u> as a minority decision, the Health Clubs fail to acknowledge decisions which rely on <u>Williams</u>, as well as other decisions that confirm the right to a declaratory judgment that consumers are entitled to rescind contracts.  <u>See, e.g.</u>, <u>Rodrigues v. Members Mortg. Co., Inc,</u>. 226 F.R.D. 147, 153 (D. Mass. 2005); <u>Latham v. Residential Loan Centers of Am., Inc.</u>, 2004 WL 1093315 (N.D. Ill. May 6, 2004) ("[W]e agree with the latter line of cases holding that a class claim under TILA seeking a declaration of the right to rescind can be maintained."); <u>McIntosh v. Irwin Union Bank & Trust Co.</u>, 215 F.R.D. 26, 32-33 (D. Mass. 2003) (discussing split among courts regarding propriety of class resolution for TILA rescission claims; holding class action appropriate, especially when "the plaintiffs seek only declaratory relief").

Plaintiffs argue that their claim for declaratory relief should not be dismissed because here they seek similar relief.  That is, Plaintiffs argue that they have alleged a basis for declaring that their health club agreements are voidable, and the Health Clubs contend that they are not. Plaintiffs argue that a justiciable controversy therefore exists and the claim for declaratory relief should not be dismissed.

It is by no means clear to the Court that the TILA lines of cases are applicable to the present dispute.  Plaintiffs' Complaint makes no reference to the TILA.  The TILA rescission issue is a statutory one.  However, Plaintiffs are certainly seeking a declaration that their contracts are voidable, a proposition that the Health Clubs dispute, all of which would seem to indicate that there is indeed an ongoing controversy.  By analogy to the TILA cases, there does

not seem to be any reason why the filing of the instant suit would not put the Health Clubs on notice that Plaintiffs wished to rescind their contracts.  Preliminarily, it does not appear that a request for a declaratory judgment is improper.

**II.  Motion to Strike Class Action Allegations**

The Health Clubs invoke Local Rule of Civil Procedure 23.1(c) in their effort to have the class action allegations in Plaintiffs' Complaint stricken.  Local Rule 23.1(c) directs plaintiffs to move for class certification within 90 days after filing a class action complaint, unless that time period is extended by the Court for good cause shown.

There is no dispute that the Court has already indulged the Plaintiffs once with an extension for filing for class certification pending resolution of the Plaintiffs' Motion for Remand.  That motion was denied on February 23, 2006.  There is also no room for argument that at the June 22, 2006 oral argument, the Court commented to counsel upon the absence of any class certification motion as of that time – to the apparent unexpected discomfiture of Plaintiffs' counsel.  Plaintiffs, of course, do not argue with the fundamental facts on this point.  They have, however, subsequently moved for another extension of time for seeking class certification.

The Health Clubs are technically correct, and Plaintiffs' failure to more timely seek a second extension seems to be a result of an avoidable misunderstanding on the part of Plaintiffs' counsel.  However, without venturing into the parties' pitched battle over whether this District's Local Rule is or is not in need of revision, the Court finds the current Local Rule 23.1(c) and the Court's inherent powers to oversee litigation provide sufficient discretionary flexibility to permit the class certification issue to be promptly and thoroughly addressed on the merits in due course. It is the Court's preference, in the absence of any demonstrable prejudice to the Health Clubs and

any willful ignorance on the part of Plaintiffs or their counsel of the importance of proceeding expeditiously, to have the class certification determination rise or fall on the merits.  Therefore, the defense motion to strike will be denied.

### III.  Plaintiffs' Motion to Extend Time to Move For Class Certification

For the reasons set forth immediately above, Plaintiffs' Motion will be granted.  Plaintiffs are forewarned that this further indulgence should not be misunderstood or taken for granted. The accompanying Order sets forth a firm deadline for the filing of a motion for class certification in this case which the Court, in the absence of unavoidable impediments to completing discovery absolutely essential to the class certification issue, expects to be met without fail.

### CONCLUSION

For the reasons set forth above, the Motion to Dismiss is denied without prejudice to the Defendants to reassert such of the arguments as may be appropriate after the completion of all discovery, the Motion to Strike is denied and the Motion to Extend Time is granted.  An Order incorporating these rulings follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ESTELLE ROBINSON, et al.,        :        CIVIL ACTION
         **Plaintiffs,**        :
                       :
        **v.**                :
                       :
HOLIDAY UNIVERSAL INC., et al.,   :
         **Defendants**     :        NO. 05-5726

## ORDER

AND NOW, this 11th day of September, 2006, upon consideration of Defendants' Motion to Dismiss (Docket No. 2), Plaintiffs' Response thereto (Docket No. 22), Defendants' Reply (Docket No. 24), Plaintiffs' Supplemental Briefing (Docket No. 31), and Defendants' Memorandum in Response to Plaintiffs' Supplemental Briefing (Docket No. 37), it is hereby ORDERED that Defendants' Motion to Dismiss is DENIED without prejudice to the Defendants to reassert such of the arguments as may be appropriate after the completion of all discovery.

IT IS FURTHER ORDERED that, upon consideration of Defendants' Motion to Strike Plaintiffs' Class Action Allegations (Docket No. 32) and Plaintiffs' Response thereto (Docket No. 36), Defendants' Motion to Strike is DENIED.

Finally, IT IS ORDERED that, upon consideration of Plaintiffs' Motion to Extend Time to Move For Class Certification (Docket No. 33) and Defendants' Response thereto (Docket No. 36), Plaintiffs' Motion is GRANTED.  Plaintiffs shall file a motion for class certification, if any, on or before November 20, 2006.  The parties are instructed that discovery in addition to that which is related to class certification may also proceed, and, therefore, the parties should not anticipate a lengthy period of time following resolution of the class certification issue to pursue

so-called merits discovery.

BY THE COURT:


S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE